ROLLIN EDSON DOOLITTLE, APPELLANT, V. CHARLES E. CALLENDER, APPELLEE.

FILED MARCH 16, 1911. No. 16,350.

1. **Contracts: VALIDITY.** Where a retail merchant enters into a contract with an advertising agency, which provides that the agency is to send to the merchant, weekly for a period of one year, one cut of a prescribed size, and copy of reading matter for use with each of said cuts, both the cut and the reading matter to be such as the advertising agency in its judgment thinks best to advertise the business of such merchant, for which the merchant is to pay a specified sum for each cut at a certain time, such contract is not void for lack of consideration, nor for want of mutuality.

2. ———: **BREACH OF CONTRACT: MEASURE OF DAMAGES.** And where such merchant continues to receive the cuts and reading matter specified in said contract without objection or complaint for a period of four months, and makes payment therefor, and then declines to continue the contract upon the sole ground that he has gone out of business and does not need any more cuts, he is liable to such agency for its damages sustained by reason of such breach of the contract.

3. ——: ——: ——. And in such a case the measure of damages would be the contract price, less whatever it would thereafter have cost such agency to complete the contract.

APPEAL from the district court for York county: GEORGE F. CORCORAN, JUDGE. *Reversed.*

*France & France,* for appellant.

*W. L. Kirkpatrick* and *George M. Spurlock, contra.*

FAWCETT, J.

Plaintiff brought suit to recover an unpaid balance upon the following contract:

"The Art League, Cut Makers, 656 Broadway, New York. No. 2541. Book...... A Series. Any arrangement made with representative must be specified plainly on this order.

"Gentlemen: Send one cut (about 2 in. by 2 in., your A series) and copy of reading matter per week to use in this city only, both such as you think best to advertise the grocery business, for one year and after that until further notice. I will pay you fifty-five cents for each cut, at the end of the quarter they are sent. In consideration of the above, this exclusive right is given. The Art League agrees, upon accepting this, not to send any of the cuts sent under this agreement to any one else in the city mentioned, during the time.

"Dated, The Art League, Nov. 10, 1905. Per Jos. F. Taylor.

"C. E. Callender, (Name.)
"York, Nebraska. (Address.)"

Defendant prevailed, and plaintiff appeals.

Within a few days after the execution of the above contract, plaintiff began mailing, weekly, to the defendant the cuts and reading matter called for by the contract, and defendant continued to receive them without objection or complaint of any kind until February 6, following, when he wrote plaintiff acknowledging receipt of a

statement, and stating, "and before remitting for same would ask how much I must remit, and you discontinue after 10th this month. I do not need any more of them and shall not after that date. It is not necessary to say why, except that it is not to use something else instead." To this plaintiff replied February 15, stating that he could not afford to cancel the contract for anything less than 10 per cent. from the contract price. Plaintiff continued to mail the cuts and defendant to receive them without objection until the 30th of March, when defendant again wrote plaintiff, stating, "I am now out of business and need no more cuts. Discontinue sending them. I have paid for them to April 1st." Plaintiff continued thereafter to mail the cuts and reading matter until the end of the year, defendant refusing to take them from the post office. There is an entire absence of evidence to show that defendant ever at any time complained to plaintiff that the cuts and reading matter were not according to the contract, or assign any other reason for his failure to comply with his contract than the one stated in his letter of March 30, that he was then out of business and did not need any more cuts. In addition to that, defendant recognized the contract, and his obligation thereunder, by paying for the cuts which, he says, he received during the four months prior to his going out of business. In the light of these facts, defendant should not now be permitted to say that the cuts were of no value to him, nor that they were not made in every respect as provided for by the contract, nor that he made the payment referred to "in reliance upon plaintiff that he would thereafter more fully perform the terms of said instrument on his part to be performed."

We do not think the contract was void for lack of consideration, or for want of mutuality, as urged by defendant. The consideration on the part of plaintiff was that he would furnish one cut a week and copy of reading matter, both such as he might think best to advertise defendant's grocery business. For that defendant agreed

to pay 55 cents for each cut at the end of the quarter in which they were sent. We think the promise of each was a sufficient consideration for the promise of the other, and that there was no lack of consideration on either side. The fact that the contract provided that both the design of the cut and the wording of the reading matter were to be such as plaintiff might think best did not render the contract void. Plaintiff was in the advertising business, making a specialty of furnishing this kind of cuts and of reading matter to accompany the same, and, if defendant saw fit to make a contract to take cuts and reading matter for a year and to leave the design of the cuts and the wording of the reading matter to plaintiff's judgment,-that was defendant's own concern. It may have been a departure in advertising for a business man in the city of York. It may have been an experiment, so to speak; but many a business man has greatly improved his business by departing from the beaten path. Such departure has often led to fortune; and the fact that defendant saw fit to make such a departure in the present case cannot be imputed to plaintiff as fraud. The fact that, if plaintiff failed to send the cuts and reading matter as agreed, defendant might have some difficulty in making proof of his damages sustained by reason thereof will not avoid the contract. Many such cases arise; but we are not aware that it has ever been held that for such a reason alone a contract will be held void. The contract is fair upon its face, was entered into by defendant without undue influence on plaintiff's part, was subsequently recognized by defendant for more than four months by the receipt of the cuts without complaint and by payment therefor. Plaintiff was at all times ready to perform his part of the contract, and we are unable to discover from the record before us any good reason why defendant should not respond in damages for his refusal to perform his part.

The evidence is conflicting as to how many cuts defendant had received at the time he wrote his letter of March 30. Defendant testified that he had only received

16.   Plaintiff testified that he began sending the cuts on or about November 15, and that he sent one every week. If that be true, then plaintiff had mailed 20 cuts before defendant wrote his letter of March 30.   Possibly the twentieth cut had not yet reached York, but it undoubtedly reached there before plaintiff received defendant's letter.   Under the contract 20 cuts would be worth $11. Defendant had only remitted $8.25, so that he did not remit enough to pay for the cuts which had been shipped before his termination of the contract, if his letter of March 30 is to be construed as such termination.   Plaintiff also testified that he received notice from the postal authorities about April 12, 1906, that defendant was refusing to take the cuts from the office, and that at that time he had expended all that was necessary to expend to fill the order for the entire year, except the sum of $3.60, and that therefore the difference between this $3.60 and the contract price for the full year would be the amount of plaintiff's damage for defendant's breach of the contract.   This would seem to be a fair adjustment of the difference between the parties, and we think that, under the evidence in the record before us, plaintiff should have recovered that amount.

The judgment of the district court is therefore reversed and the cause remanded for further proceedings.

REVERSED.

LETTON, J., not sitting.