MEEK COMPANY, APPELLANT, V. HENRY ROHLFF, APPELLEE.

FILED APRIL 20, 1912.    No. 17,075.

1. **Sales: ACTION: EVIDENCE.** The evidence examined, and set out in the opinion, *held* insufficient to sustain the verdict and judgment.

2. **Trial: DIRECTING VERDICT.** "When the evidence which has been offered is not sufficient in *law* to make out the case of the party who has offered it, it is the duty of the court to so instruct the jury." *Hiatt v. Brooks,* 17 Neb. 33.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Reversed with directions.*

*Baldrige, De Bord & Fradenburg,* for appellant.

*George W. Shields* and *Robert J. Shields, contra.*

FAWCETT, J.

Action by plaintiff in the district court for Douglas county to recover for metal signs manufactured and delivered by it to defendant under a written order. Verdict and judgment for defendant, and plaintiff appeals.

On November 19, 1908, defendant signed and delivered to one Brown, a member of the firm of Frederickson, Brown & Chesney, plaintiff's agents at Minneapolis, an order for

500 stamped, framed signs for an expressed consideration of $200. In the order it was stated: "No proof wanted. Ship via Freight F. O. B. Coshocton. Special instructions—Use your own judgment as to displaying ad. Get signs as soon as possible." The order also recited: "The approval or acceptance of this contract being based upon the written requirements shown hereon, it is understood and agreed that any verbal alterations or agreements between buyer and salesmen, either now or hereafter, are not covered by this contract, and shall not be binding upon the parties hereto." The signs were promptly manufactured and shipped to and received by defendant. When received they did not meet with the approval of defendant, and he notified plaintiff that he would not accept them; whereupon, this suit was instituted.

The petition alleges the sale and delivery of the signs, the refusal of the defendant to receive the same, the amount due, and prays judgment. The answer denies all allegations of the petition not admitted; admits that he entered into the contract, but denies that the copy set out is a true copy; and alleges: "That prior to the time of the writing of said alleged contract, defendant had purchased from plaintiff other signs of a similar character, and one T. M. Brown, who was of the firm of Frederick, Brown & Chesney, the agent of the plaintiff, to induce the defendant to give him an order for said 500 signs, said to defendant that if he, the defendant, would leave it entirely to the Meek Company it would furnish to him 500 signs for $200, which in every respect would be as good and attractive as the ones that had been previously sold by the plaintiff to the defendant, and that said signs should be satisfactory to the defendant; that the signs that had been purchased by him from plaintiff prior to said time were first-class and artistic, whereas the signs sued for were botches and almost worthless; that there was neither art, nor good workmanship, nor taste exhibited in any of said signs; that when said signs came he refused to accept them and so notified the plaintiff." The

reply is a general denial. It is said by defendant that the reply was not filed until the conclusion of the trial, but no motion was made to strike it from the files, nor objection of any other kind interposed in the court below. We think it is too late to attempt to assail it here.

On behalf of plaintiff it was shown by the witness Selby that he had been treasurer of plaintiff since its organization; that the business of plaintiff was that of manufacturing all kinds of advertising goods, including metal signs; that it received defendant's order on or about November 19, 1908, through their agents at Minneapolis; that the order was duly entered on the books of the company and filled by them, and shipped on December 8, 1908; that he had examined the signs before they were shipped, and that they were in first-class condition and made exactly in accordance with the order sent them; "that they used their best judgment in regard to the display, and that they were first-class in every respect, both as regards the lithographing and lettering." The witness Townsend testified that he was in charge of the metal sign department of plaintiff; that he recalled the Rohlff order; that the order was turned over to his department and filled; that he personally examined the signs before they were packed and found that they were first-class in every respect and very attractive; "and as there were no instructions with the order as to the character of the lettering which should be done, the plaintiff followed its own judgment and printed the advertisement in the usual way with a shade of green in harmony with the color of the picture used; that a different advertisement could have been put on, had it been ordered, but that it was left to him and he followed his own best judgment as to what he thought would please the customer, and that the signs were made in exact accordance with the terms of the order, and that they were duly shipped to the defendant herein and that he had accepted the same, and that the only complaint received by the plaintiff from the defendant was that the printing of the signs was not according

to his liking." Witness Brown-testified that he was an advertising broker and represented plaintiff in the solicitation of advertising matter; that on plaintiff's behalf he solicited from defendant and took the order for the signs in controversy; that defendant told him he was in a great hurry for these signs, and said it would be unnecessary to submit the sketch, but to let the artist display the "ad" in what he thought was the best way; "that he talked with Mr. Rohlff relative to the coloring to be used in the lettering, and Mr. Rohlff agreed with him that he had best let the artist use his own judgment in order to get the most harmonious effect, and for that reason Mr. Rohlff said that it would be unnecessary to submit a sketch, but to let the artist use his best judgment and hurry the signs along as fast as possible."

Defendant testified that he had been in the wholesale liquor business about 15 years, and had previous to this time ordered other signs from plaintiff; that he signed the order, copy of which was attached to plaintiff's deposition; that Mr. Brown, representing plaintiff, called upon him and showed him the sign in controversy without any letters on it and wanted to know if he couldn't sell it to him; that he agreed to buy it, "if he could have some nice satisfactory advertising on it and give him as nice letters as he had on the other signs, and he gave him the wording to put on it and suggested to get a good flashy sign; that, at the suggestion of Mr. Brown, he followed his advice and left it entirely to the artist." Defendant then offered in evidence the sign which he had previously purchased of plaintiff, and also one of the signs involved in the suit, which he had had altered by a sign painter in Omaha. He further testified that he had been in the saloon business for 23 years, was somewhat familiar with the methods of advertising, felt competent to examine cards, pictures, etc., and to state whether they were good advertising or not, and that the sign furnished by plaintiff "was bad advertising, in that it was dull, not a bit attractive, looked like a rubber stamp job, and not attractive to the

eye." The witness Zerzan, introduced by defendant, testified that his occupation was advertising novelties; that he was a sign painter by trade and also painted some pictures; that he had examined the signs in controversy; "that he would consider it faulty in that the coloring in the lettering was not bold enough for advertising purposes, and that the picture in itself is artistic, and the design in general, but that the lettering, or lay-out, could be improved upon, that is, that the space of the letters and the style of the letters could be made better; that he has taken several copies of this sign and experimented them with other colors for letters, and in order to make exhibit No. 2, being the sign in question herein, a good advertising card, a good strong color should be used for the lettering, something that is a slight contrast from the background, which would make it more effective and more attractive;" that he had retouched three of the signs, and that "for advertising purposes he considered it decidedly poor judgment in using the color that they did and making the display they did on the sign; and that it was not good workmanship." The witness Boder, called by defendant, testified that he was by occupation a sign painter. Upon being shown the sign in controversy, he testified "that his idea was that the coloring was not strong enough or not bold enough for advertising purposes, and if the colors were strengthened it would improve the artistic effect of the picture, and that if the coloring was stronger it would not in any way lessen the artistic effect of the picture, and the picture would be just as attractive notwithstanding bolder colors were used and such as were more easily seen."

The above is almost a complete transcript of the evidence set out in the abstract, and the most that can be said for it is that it shows that the judgment of defendant and his witnesses as to the artistic display of the lettering upon the sign (which, it is stated, was the picture of a beautiful woman) does not tally with the judgment of the plaintiff's officials and employees, who manufactured

the signs. It is urged by defendant that under the talk between defendant and the agent Brown, at the time the order was taken, the matter of display was left to the judgment of plaintiff's "artist;" that there is no evidence to show that plaintiff's artist ever had anything to do with the matter or his judgment obtained; that "these signs were metal signs, and various workmen must necessarily work upon them, blacksmiths, tinsmiths, or machinists must prepare the metal, artists must design the picture of the woman, and sign painters or persons skilled in advertising display would be supposed to paint or print the signs or direct how they should be done, so that they might just as well, in order to prove that they had done in accordance with the contract as construed by us, have called the blacksmith, the machinist, or the tinsmith, or even the janitor. The jury, having seen the sign sent by the plaintiff to the defendant, had a right to suppose from its appearance that they had chosen the janitor." This contention is quite readable, but not persuasive. The trouble with it is, the evidence shows that this work was done in the metal sign department, of which the witness Townsend was in charge; that, as there were no instructions with the order as to the character of the lettering which should be done, plaintiff followed its own judgment and printed the advertisement in the usual way; "that a different advertisement could have been put on, had it been ordered, but that it was left to *him* and *he* followed his own best judgment as to what he thought would please the customer." Parties of full age, free from restraint, are competent to contract as they see fit. In ordering the signs in controversy, defendant had a right to demand a sketch or proof of the advertising, including the color of the lettering thereon, and to use his own judgment, or he could agree to be bound by the judgment of the plaintiff. He saw fit to do the latter, and, there being no evidence in the record that plaintiff, through its officers and employees, was guilty of any bad faith, he is bound by their judgment. If men will persist in making improvi-

dent contracts, they must suffer the consequences thereof. It is not the province of the court to extricate them therefrom. In *Doolittle v. Callender*, 88 Neb. 747, a very similar case, we said: "Plaintiff was in the advertising business, making a specialty of furnishing this kind of cuts and of reading matter to accompany the same, and, if defendant saw fit to make a contract to take cuts and reading matter for a year and to leave the design of the cuts and the wording of the reading matter to plaintiff's judgment, that was defendant's own concern."

The evidence, in our judgment, utterly fails to establish any defense to plaintiff's claim, and its motion for a directed verdict, at the conclusion of the trial, should have been sustained. Having reached this conclusion, a consideration of the other point assigned in plaintiff's brief, and discussed by the parties, is unnecessary.

The judgment of the district court is reversed and the cause remanded, with instructions to render judgment for the amount of plaintiff's claim, with interest.

REVERSED.